IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANGELOS WASHINGTON, #276773, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:23-cv-00301 |
| v. | ) ) ) | Judge Trauger<br>Magistrate Judge Frensley |
| THE STATE OF TENNESSEE, *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Angelos Washington, an inmate of the Bledsoe County Correctional Complex ("BCCX") in Pikeville, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against the State of Tennessee, "Metropolitan Gov.", BCCX, Centurion Health Service, Assistant Warden of Treatment Brad Coble, Health Service Administrator Katey Campbell, and Dr. Kendra l/n/u ("Dr. Kendra"), alleging violations of Plaintiff's civil rights. (Doc. No. 1). Plaintiff also alleges claims under the Tennessee Constitution. (*Id*. at 9). Plaintiff later filed a supplement (Doc. No. 5) to the complaint that clarifies Plaintiff's requested relief.

The complaint as supplemented is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.    PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief.  Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a

1

governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. Alleged Facts

Plaintiff has been paralyzed from the waist down since 2001. He is wheelchair-bound and uses an "in and out" catheter to empty his bladder. (Doc. No. 1 at 5). Plaintiff typically urinates at

2

Case 1:24-cv-00284-CEA-SKL    Document 8    Filed 05/25/23    Page 2 of 13    PageID #: 48

least five times daily. According to Plaintiff, he is supposed to use an "in and out" catheter one time only due to the threat of "life threatening lethal kidney infections." (*Id*.)

On August 28, 2022, Plaintiff placed a sick call request, suspecting that he had a bladder infection. He was taken to sick call three days after his request, instead of two days like BCCX policy requires.

Dr. Kendra told plaintiff that he could only have one catheter a day because "they are too expensive to give the plaintiff one each time he was to urinate." (Doc. No. 1 at 7). Plaintiff requested gloves and wipes to use with the catheter, and Dr. Kendra denied Plaintiff's request. Plaintiff submitted a grievance regarding the catheter and supplies and, to date, he has not received a response.

On September 3, 2022, Plaintiff wrote an "inquiry request" to Warden of Treatment Brad Coble "about needing more in and out catheters and medical suppl[ies] to clean private part before insertion to prevent infection in the future." (Doc. No. 1 at 8). On September 6, 2022, Coble responded to Plaintiff's grievance, stating "whatever medical decides to do, as far as Brad Coble is concern[ed], that's on medical." (*Id*. at 8).

On September 7, 2022, Plaintiff spoke with Health Service Administrator Katey Campbell about Plaintiff's medical needs, and she denied his request for more catheters, wipes, and gloves, stating that they "were to[o] much money to give out." (*Id*. at 8). She told him to wash out his catheter with tap water from his cell sink. Doing so, according to Plaintiff, puts him at "high risk of a blood born patthagen [sic]." (*Id*. at 9).

Campbell also told Plaintiff to put in another sick call request. Each time that Plaintiff puts in a sick call request it costs him $3.00.

On September 8, 2022, Dr. Kendra told Plaintiff that he had a serious bladder infection due to using the "in and out catheter" multiple times. Plaintiff is experiencing pain from this infection.

As relief, Plaintiff seeks compensatory and punitive damages. He also asks to be transferred to the DeBerry Special Needs facility.

**IV. Analysis**

Plaintiff brings this action against the State of Tennessee, "Metropolitan Gov.", BBCX, Centurion Health Service, Brad Coble, Katey Campbell, and Dr. Kendra. Coble, Campbell, and Kendra are sued in their individual and official capacities. The complaint alleges claims under the Eighth, Fifth, and Fourteenth Amendments to the United States Constitution. The complaint also alleges claims under the Tennessee Constitution.

A. <u>Federal Claims</u>

1. *Preliminary Matters*

First, the complaint names BCCX as a defendant to this action. BCCX is a building; it is not "person" who can be sued under 42 U.S.C. § 1983. *Plemons v. CoreCivic Admin. Headquarters*, No. 3:18-cv-00498, 2018 WL 4094816, at *3 (M.D. Tenn. Aug. 28, 2018) (citing *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are inappropriate defendants under Section 1983)). Thus, the complaint fails to state a Section 1983 claim upon which relief can be granted against BCCX, and all claims against BCCX will be dismissed.

Next, the complaint names "Metropolitan Gov." as a defendant. Plaintiff alleges that BCCX is "an affiliate" of "the Metropolitan Government of Pikeville, TN and Bledsoe County." (Doc. No. 1 at 4). However, BCCX is operated by the Tennessee Department of Correction (TDOC), not any county, metropolitan, or state government. *See*

4

https://www.tn.gov/correction/sp/state-prison-list/bledsoe-count-correctional-complex.html (last visited May 5, 2023). There are no allegations in the complaint related to the metropolitan government of Pikeville, Tennessee (if such exists), or Bledsoe County, Tennessee. Plaintiff's claims against "Metropolitan Gov." therefore will be dismissed. To the extent that Plaintiff is attempting to sue the entity that operates BCCX, Plaintiff has not named TDOC as a defendant to this action.

Finally, the complaint names the State of Tennessee as a Defendant. The Eleventh Amendment to the United States Constitution prohibits suits against a state in federal court for damages. *See Ky. v. Graham,* 473 U.S. 159, 169-70 (1985). And the Supreme Court has held that the bar against suits against the State "exists whether the relief sought is legal or equitable," *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)), unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute, *Pennhurst*, 465 U.S. at 98-101. Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Tennessee has not consented to civil rights suits in federal court. *Berndt v. Tenn.*, 796 F.2d 879 (6th Cir. 1986). Moreover, a state is not a person within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Because Supreme Court precedent makes no distinction between suits brought against a state or state agency for monetary damages versus suits seeking prospective relief (*i.e.*, declaratory judgment or injunction) and because the State of Tennessee is not a person under Section 1983, Plaintiff's claims against the State of Tennessee fail to state claims upon which relief can be granted, and those claims must be dismissed.

5

## 2. *Eighth Amendment Claims*

First, the complaint alleges that Defendants Centurion Health Service, Brad Coble, Katey Campbell, and Dr. Kendra were deliberately indifferent to Plaintiff's serious medical needs. (*See* Doc. No. 1 at 7) (alleging that Defendants' actions "violate the Plaintiff's 8th Amendment rights of the United States Constitution to be free from cruel and unusual punishment which is one of the reasons for the grounds of this suit.").

"The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment." *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The Eighth Amendment protects inmates serving sentences of imprisonment after conviction, as Plaintiff is. The deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "'sufficiently serious.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). A plaintiff satisfies the subjective component "'by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Rouster*, 749 F.3d at 446 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

6

Case 1:24-cv-00284-CEA-SKL Document 8 Filed 05/25/23 Page 6 of 13 PageID #: 52

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d 693, 703.

Here, for purposes of the required PLRA screening, the court finds that the medical problems Plaintiff describes (pain, paralysis, and bladder infections) constitute sufficiently serious medical needs. *See Freeman v. Headley,* No. 2:18-cv-68, 2022 WL 9809819, at *5 (W.D. Mich. Feb. 14, 2022) (finding that catheter-using inmate's urinary tract infection was a serious medical need); *Porter v. Conant,* No. 18-10690, 2020 WL 8366979, at *4 (E.D. Mich. Dec. 28, 2020) (finding that wheelchair-bound inmate's paralysis constitutes a serious medical need); *Pugh v.*

*Holden-Selby*, No. 12-CV-12357, 2013 WL 5874727, at *15 (E.D. Mich. Oct. 30, 2013) (holding that the "need for a wheelchair, even if for distance only, is a serious medical need.").

With regard to the subjective component of Plaintiff's claims, which is a defendant-specific matter, the court will start with Dr. Kendra in her individual capacity. The complaint alleges that Dr. Kendra was aware of Plaintiff's need for more "in and out" or single-use catheters, gloves, and wipes to prevent Plaintiff from developing a serious bladder infection, but she denied his request because the items were too expensive. The complaint further alleges that, after Dr. Kendra denied Plaintiff's request, Plaintiff developed a serious bladder infection which Dr. Kendra attributed to Plaintiff's repeated use of the single-use catheters. These allegations imply that Dr. Kendra made decisions about Plaintiff's medical treatment based on cost rather than on patient need. For purposes of the required PLRA screening, such allegations could give rise to an inference of deliberate indifference on the part of Dr. Kendra. Consequently, the court finds that the complaint sets forth a non-frivolous Eighth Amendment claim under Section 1983 against Dr. Kendra in her individual capacity based on her refusal to provide Plaintiff with needed medical supplies. This claim will proceed for further development.

Likewise, Plaintiff's Eighth Amendment claim against Health Service Administrator Katey Campbell in her individual capacity will proceed. The complaint alleges that Campbell also denied Plaintiff's request for more catheters, wipes, and gloves due to the high cost of the items rather than her evaluation of Plaintiff's medical need for the items. The complaint further alleges that Campbell told Plaintiff to wash his single-use catheters with tap water which, according to the complaint, increased Plaintiff's chance of developing an infection, which ultimately happened. *See Freeman*, 2022 WL 9809819, at *6 ("Freeman had a history of reusing old catheters—a practice that health care staff had warned him could lead him to develop urinary tract infections."). On

8

initial review, these allegations could give rise to an inference of deliberate indifference on the part of Campbell.

As for Plaintiff's claim against Warden of Treatment Brad Coble in his individual capacity, the complaint alleges only that Coble told Plaintiff that the medical staff, not Coble, makes the decisions about what medical items Plaintiff receives. The complaint does not allege that Coble had full or partial involvement in decisions about Plaintiff's medical care or that Coble acted with deliberate indifference toward Plaintiff's medical needs. Without more, these allegations fail to state a Section 1983 claim upon which relief can be granted against Coble. The Eighth Amendment claim against Coble in his individual capacity therefore will be dismissed.

Next, the court will consider Defendant Centurion Health Service ("Centurion"), which the court infers from the complaint is the entity responsible for providing medical care to inmates at BCCX. Because Centurion performs a traditional state function in providing medical care to inmates, it acts under the color of state law. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). For Centurion to be liable under Section 1983, Plaintiff must allege that there is a direct causal link between a policy or custom of Centurion and the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). In other words, Centurion may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818. Liability attaches only if Centurion's policies are shown to be the "moving force"

9

behind Plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, the complaint alleges that Centurion has a policy of denying high-cost medical items to inmates (here, single-use catheters, gloves, and wipes) and the execution of that policy by Centurion employees caused Plaintiff's injury (a serious bladder infection and pain). For purposes of the required initial review, these allegations state a colorable Eighth Amendment deliberate indifference to serious medical needs claims under Section 1983 against Centurion. The claim will proceed.

The complaint also names the individual defendants in their official capacities. When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, the complaint alleges that Dr. Kendra and Campbell are employees of Centurion; thus, Plaintiff's official-capacity claims against Dr. Kendra and Campbell are actually claims against Centurion. The court already has determined that Plaintiff's Eighth Amendment claims against Centurion will proceed, and there is no need to repeat that analysis here. Further, it would be redundant to maintain official-capacity claims against multiple Defendants representing the same entity. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims). Accordingly, the court will maintain the claim against Centurion, and the official-capacity claims against Kendra and Campbell will be dismissed. *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 723 n.4 (6th Cir. 2020).

The complaint also alleges an official capacity claim against Coble, who is an employee of BCCX, which is operated by TDOC. To the extent that the complaint alleges TDOC bears any liability for Coble's conduct, as noted above, the Eleventh Amendment to the United States Constitution bars Section 1983 claims against a state or any arm of a state government. *Will*, 491 U.S. 58, 64. TDOC is considered part of the State of Tennessee for purposes of federal civil rights claims and therefore is not a suable entity under Section 1983, either for damages or injunctive relief. *See Hix v. Tenn. Dep't of Corrs*., 196 F. App'x 350, 355 (6th Cir. 2006) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant.") (citing *Will*, 491 U.S. 58, 64). Thus, Plaintiff's claims against Coble in his official capacity, which are actually claims against TDOC, must be dismissed because TDOC is immune from suit.

### 3. *Due Process Claims*

The complaint also alleges that Plaintiff's federal due process rights were violated because Defendants failed to address Plaintiff's grievances in a timely manner and did not follow facility policy.

With respect to the former, a prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure. *See e.g., Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (explaining that "a prisoner has no constitutional right to an effective prison grievance procedure"); *Crockett v. Davidson Cty. Sheriff's Dep't*, No. 3:19-cv-00545, 2019 WL 5592546, at *3 (M.D. Tenn. Oct. 30, 2019). An inmate who is dissatisfied with the responses to his grievances fails to state a Section 1983 claim upon which relief can be granted. *See Proctor v. Applegate,* 661 F. Supp.2d 743, 766 (E.D. Mich. 2009). Thus, Plaintiff's grievance-based claims against all Defendants must be dismissed.

With respect to the latter, an inmate's allegation that prison officials failed to follow TDOC administrative policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). Thus, the violation of a prison regulation is not actionable under Section 1983. *Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007)) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).

For these reasons, Plaintiff does not have a constitutional right to demand that Defendants comply with any particular TDOC policy, such as responding to inmate sick-call requests within two days. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, the court finds that the complaint fails to state Section 1983 claims arising from any defendant's failure to follow TDOC or facility policies. These claims will be dismissed.

B. State Claims

The complaint also purports to raise claims under the Tennessee Constitution "to be free from intimidation, harassment, and abuse from the and throughout the Tennessee state prison" and "to be free from rigor harshness and severity causing distress and especially physical discomfort and pain." Plaintiff appears to allege that Defendants Kendra and Campbell subjected him to cruel and unusual punishment in violation of the state constitution. (Doc. No. 1 at 9).

28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .

*Id*. The district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction . . . ." *Id*. at § (c)(3).

Because some of Plaintiff's federal claims survive the required PLRA screening, the court will exercise supplemental jurisdiction to hear Plaintiff's state law claims against Kendra and Campbell in their individual capacities. At this time the court makes no representation as to the timeliness or viability of such claims.

## V.  Conclusion

The court has screened the complaint as supplemented pursuant to the PLRA and determines that the complaint sets forth colorable Eighth Amendment claims under Section 1983 against Centurion and against Dr. Kendra and Campbell in their individual capacities. All other federal claims will be dismissed.

Because some of Plaintiff's federal claims survive the required PLRA screening, the court will exercise supplemental jurisdiction over Plaintiff's state law claims against Dr. Kendra and Campbell in their individual capacities.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge